IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CRISTOPHER DAVIS<br>835 Forestbrook Ln.<br>Painesville, Ohio 44077 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| SILCO, INC.<br>7635 St. Clair Ave.<br>Mentor, Ohio 44060 | )<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| | ) | |
| **Serve Also:**<br>SILCO, INC.<br>c/o Harry A. Hama<br>4110 Meadowbrook Blvd.<br>University Heights, Ohio 44118 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Cristopher Davis, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

## PARTIES

1. Davis is a resident of the city of Painesville, county of Lake, state of Ohio.

2. Silco, Inc. is a corporation for profit that maintains a place of business located at 7635 St. Clair Ave, Mentor, Ohio 44060.

3. Silco was at all times hereinafter mentioned an employer within the meaning of R.C. § 4113.52.

4. At all times referenced herein, Silco was a company with less than 500 employees subject to the FFCRA, which in turn is comprised of the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family Medical Leave Expansion Act ("EFMLEA").

**JURISDICTION AND VENUE**

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Davis is alleging a Federal Law Claim under the Families First Coronavirus Response Act ("FFCRA"), Pub. L No 116-117, 134 Stat. 178 (2020).

6. All material events alleged in this Complaint occurred in county of Lake.

7. This Court has supplemental jurisdiction over Davis' state law claims pursuant to 28 U.S.C. § 1367 as Davis' state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**FACTS**

9. Davis is a former employee of Silco, Inc.

10. Davis was hired for the role of Second Shift Supervisor at Silco.

11. On or around August 17, 2020, Davis began working for Silco.

12. On or around August 17, 2020, Silco did not maintain a second shift staff.

13. On or around August 17, 2020, Silco only allowed employees to work during first shift.

14. On or around August 17, 2020, Davis was assigned to work on first shift at Silco.

15. On or around August 17, 2020, Silco did not employ a first shift supervisor.

16. Silco did not advise Davis of his authority as a supervisor.

17. On or around August 17, 2020, Silco did not introduce Davis to other Silco employees as a supervisor.

18. At all times material herein, Eduardo Garcia-Romo was employed at Silco as a general laborer.

19. On or around November 17, 2020, Davis re-arranged the work area at Silco for efficiency.

20. On or around November 17, 2020, Garcia-Romo became enraged with Davis for Davis's changes to their workplace.

21. On or around November 17, 2020, Davis had authority to make changes to the workplace.

22. On or around November 17, 2020, Garcia-Romo threw garbage cans and chairs around Silco's workplace.

23. On or around November 17, 2020, Garcia-Romo stated that Davis "had started this, [sic] motherfucker," by rearranging the workplace.

24. On or around November 17, 2020, Garcia-Romo threatened Davis with physical violence, stating, "I'm going to kick your ass." ("Garcia-Romo's First Threat")

25. Garcia's First Threat caused Davis to be afraid for his own safety.

26. Garcia-Romo's actions on November 17, 2020, posed a threat to the safety of Davis and other Silco employees.

27. At all times material herein, Corey Jubeck was employed as the plant manager at Silco.

28. As plant manager, Jubeck had the ability to hire, fire, and/or discipline employees on behalf of Silco.

29. At all times material herein, Davis worked under Jubeck's supervision.

30. At all times material herein, Garcia-Romo worked under Jubeck's supervision.

31. On or around November 17, 2020, Davis reported Garcia-Romo's actions and Garcia's First Threat to Jubeck. ("Davis's Safety Complaint").

32. Upon information and belief, Defendant reduced Davis's Safety Complaint to writing.

33. Upon information and belief, a document was created when Davis made his Safety Complaint.

34. On or around November 17, 2020, Jubeck failed to take any remedial action following Davis's Safety Complaint.

35. On or around November 17, 2020, Jubeck responded to Davis's Safety Complaint by telling Davis that he "just had to deal with people."

36. Based on Silco policies, Davis's Safety Complaint was considered to be a significant workplace incident.

37. Defendant has a policy and practice of fully investigating significant workplace incidents.

38. Defendant has a policy and practice of getting written statements from all participants to significant workplace incidents.

39. Defendant has a policy and practice of getting written statements from all witnesses to significant workplace incidents.

40. Defendant violated its policy and practice of fully investigating significant workplace incidents regarding Davis's Safety Complaints.

41. Defendant violated its policy and practice of getting written statements from all participants to significant workplace incidents regarding Davis's Safety Complaints.

42. Defendant violated its policy and practice of getting written statements from all witnesses to significant workplace incidents regarding Davis's Safety Complaints.

43. Defendant's failure to follow its policy and practice of fully investigating significant workplace incidents was an adverse action against Davis.

44. Defendant's failure to follow its policy and practice of getting written statements from all participants to significant workplace incidents was an adverse action against Davis.

45. Defendant's failure to follow its policy and practice of getting written statements from all witnesses to significant workplace incidents was an adverse action against Davis.

46. Jubeck disregarded Davis's Discrimination Complaints and failed to take any action with respect to Garcia-Romo's creation of an unsafe work environment.

47. Garcia-Romo was not given a verbal warning as a result of his threats of physical violence to Davis.

48. Garcia-Romo was not given a written warning as a result of his threats of physical violence to Davis.

49. Garcia-Romo's employment at Silco was not suspended as a result of his threats of physical violence to Davis.

50. Garcia-Romo's employment at Silco was not terminated as a result of his threats of physical violence to Davis.

51. Defendant's failure to take corrective action created an unsafe working environment.

52. Defendant's failure to ensure a safe work environment is a violation of R.C. § 4101.11.

53. R.C. § 4101.11 provides that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

54. Defendant's failure to ensure a safe work environment is in violation of R.C. § 4101.12.

55. R.C. § 4101.12 provides that "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe."

56. R.C. § 4101.12 further provides that "No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

57. R.C. § 4101.12 further provides that "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

58. Defendant's failure to ensure a safe work environment is in violation of Ohio public policy as recognized by the Ohio Supreme Court: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prod., Inc.*, 2002-Ohio-66, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385, 388 (2002).

59. The United States District Court for the Southern District of Ohio held "*Pytlinski* is still controlling, it is still good law, and it could not be clearer: 'Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.'" *Lightner v. CB&I Constructors, Inc.*, No. 14-CV-2087, 2016 WL 6693548, at *10 (S.D. Ohio Nov. 14, 2016) (quoting *Pytlinski*).

60. The United States District Court for the Southern District of Ohio held: "Retaliation against employees who file complaints regarding workplace safety, there, clearly contravenes the public policy of Ohio." *Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352589, *4 (S.D. Ohio), *report and recommendation rejected on unrelated grounds in Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352630 (S.D. Ohio).

61. The Tenth District Court of Appeals in *Blackburn v. Am. Dental Ctrs.*, 22 N.E.3d 1149, 1158 (10th Dist. 2014) held that R.C. §§ 4101.11 and 4101.12 "establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters."

62. The Tenth District Court of Appeals in *Blackburn*, further held that Ohio has a public policy prohibiting terminating the employment of individuals who make complaints regarding an unsafe work environment.

6

63. Defendant's failure to take proper corrective action following acts of violence in the workplace jeopardizes Ohio's public policy ensuring a safe working environment.

64. Defendant's ratification of crimes in the workplace jeopardizes Ohio's public policy ensuring a safe working environment.

65. From November 2020 until February 2021, Garcia-Romo made a pattern of practice of losing his temper at work.

66. From November 2020 until February 2021, each time Garcia-Romo lost his temper and reacted violently to an issue at work, Davis reported Garcia-Romo's conduct to Jubeck.

67. From November 2020 until February 2021, Jubeck failed to take any corrective action or investigate Davis's complaints of Garcia-Romo's behavior.

68. From November 2020 until February 2021, Jubeck allowed Garcia-Romo to threaten the safety of other Silco employees without consequence.

69. Between November 2020 and February 2021, Davis made multiple requests for Jubeck to allow him to start and supervise a second shift crew at Silco.

70. Between November 2020 and February 2021, Davis requested to start a second shift crew in order to distance himself from Garcia-Romo.

71. Between November 2020 and February 2021, Jubeck denied Davis' multiple requests to start a second shift crew at Silco.

72. On or around December 11, 2020, Davis developed symptoms commonly associated with COVID-19.

73. Immediately after Davis developed potential COVID-19 symptoms, Davis notified Jubeck of his health status.

74. On or around December 11, 2020, Jubeck instructed Davis to remain home until he was free from potential COVID-19 symptoms.

75. While at home with potential COVID-19 symptoms, Davis took two independent COVID-19 tests.

76. In or around December 2020, both of Davis's COVID-19 tests returned negative results.

77. In or around December 2020, Davis informed Jubeck of his two negative COVID-19 test results.

78. In or around December 2020, Davis requested that Jubeck allow Davis to return to work since his condition was not COVID-19.

79. In or around December 2020, Jubeck refused to allow Davis to return to work until his potential COVID-19 symptoms had completely subsided.

80. As a result of his symptoms, Jubeck forced Davis to take time off work from December 11, 2020, until January 11, 2021.

81. Silco refused to pay Davis for his forced medical leave from December 11, 2020, until January 11, 2021.

82. Between December 11, 2020 and January 11, 2021, Davis met with doctors five times to diagnose and treat his condition.

83. In or around January 2021, Davis was diagnosed with bronchitis.

84. In or around January 2021, Davis was treated for bronchitis.

85. In or around January 2021, Davis quickly recovered from his bronchitis.

86. On or around February 18, 2021, Garcia-Romo became angry with Davis.

87. On or around February 18, 2021, Garcia-Romo began kicking drum rollers around Silco into pedestrian paths and towards other Silco employees.

88. On or around February 18, 2021, Davis believed that Garcia-Romo was out of control.

89. On or around February 18, 2021, Davis feared for his own safety.

90. On or around February 18, 2021, Davis feared for the safety of other Silco employees.

91. On or around February 18, 2021, Davis tried to report Garcia-Romo's conduct but was unable to reach Jubeck or any other Silco employee with recognized supervisory authority.

92. At all times material herein, Mardell (Last Name Unknown) was an employee at Silco.

93. At all times material herein, Garcia-Romo did not have the authority to hire, fire, and/or discipline Mardell LNU on behalf of Silco.

94. On or around February 20, 2021, Davis asked Mardell LNU to assist him in cleaning a piece of equipment.

95. On or around February 20, 2021, Garcia-Romo harassed Mardell LNU for helping Davis.

96. On or around February 20, 2021, Garcia-Romo told Mardell LNU that he was fired from Silco.

97. On or around February 20, 2021, Davis defended Mardell LNU and told Garcia-Romo to leave Mardell LNU alone.

98. On or around February 20, 2021, Garcia-Romo redirected his rage from Mardell LNU to Davis.

99. On or around February 20, 2021, Garcia-Romo told Davis that he was "the fucking problem."

100. On or around February 20, 2021, Garcia-Romo threw his gloves on the ground and rushed at Davis.

101. Removing one's gloves and rushing towards another person is commonly understood to indicate an individual's intent to physically attack that person.

102. On or around February 20, 2021, Garcia-Romo threatened Davis a second time, again stating "I'm going to kick your ass." ("Garcia-Romo's Second Threat")

103. On or around February 20, 2021, other Silco employees intervened and prevented Garcia-Romo from physically striking Davis.

104. Davis reported Garcia-Romo's Second Threat to Defendant.

105. Upon information and belief, Defendant reduced Davis' report of Garcia-Romo's Second Threat to writing.

106. Upon information and belief, a document was created regarding Davis' report of Garcia-Romo's Second Threat.

107. On or around February 20, 2021, Davis called Jubeck via telephone to report Garcia-Romo's conduct that day and Garcia-Romo's Second Threat.

108. On or around February 20, 2021, Jubeck refused to speak with Davis regarding Garcia-Romo's conduct that day.

109. On or around February 21, 2021, Davis approached Jubeck in person at Silco.

110. On or around February 21, 2021, Jubeck again refused to speak with Davis regarding Garcia-Romo's conduct on February 20, 2021.

111. On or about February 22, 2021, Silco terminated Davis's employment.

112. On or about February 22, 2021, Silco alleged that the reason for Davis's employment was that Davis was unable to get along with his co-workers, namely Garcia- Romo.

113. It was unreasonable for Silco to expect Davis to collaborate with a co-worker who routinely threatened Davis's physical safety.

114. Upon information and belief, Silco has a progressive disciplinary policy,

115. Upon information and belief, Silco's disciplinary policy calls for escalating levels of discipline for infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

116. Davis did not receive a verbal warning.

117. Davis did not receive a written warning.

118. Davis did not receive a second written warning.

119. By terminating Davis, Silco violated its own progressive discipline policy.

120. Silco's purported reason for Davis's termination is pretext for whistle blower retaliation.

121. On or about date, Davis was actually terminated in retaliation for making several protected complaints of unsafe activity at Silco.

122. Upon information and belief, Silco permitted similarly-situated, employees who had not complained of Garcia-Romo's violent behavior and threats of physical assault to retain their employment despite having performance that was similar to or worse than Davis's.

123. Defendant did not proffer a legitimate non-discriminatory reason for terminating Davis.

124. As a result of and being wrongfully terminated from Silco, Davis has suffered severe emotional distress, anxiety, and depression.

125. The above facts demonstrate that Defendant wrongfully terminated Davis in violation of public policy.

126. The above facts demonstrate that Defendant engaged in a pattern and practice of whistle blower retaliation.

127. There was a causal connection between Davis's complaints of unsafe and/or illegal activity at Silco and Defendant's termination of Davis.

128. Defendant's employees were aware that Davis made complaints that Defendant was creating and/or ratifying an unsafe working environment.

129. Defendant's employees were aware that Defendant terminated Davis' employment.

130. Defendant dissuaded its employees from making complaints regarding an unsafe workplace in terminating Davis' employment for making complaints regarding an unsafe workplace.

131. Defendant jeopardized Ohio's public policy in protecting employees who complain about an unsafe working environment in dissuading its employees from making such complaints.

### COUNT I: UNLAWFUL INTERFERENCE WITH FFCRA RIGHTS

132. Davis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

133. Pursuant to FFCRA, employers are required to provide employees with four weeks of paid sick time if the employee is unable to work because of the need to quarantine for their own COVID-19 symptoms.

134. Silco is a covered employer under the FFCRA.

135. On or about December 11, 2020, Davis engaged in protected activity by asserting his reasonable belief that ne needed to take leave to quarantine under the FFCRA.

136. During Davis's FFCRA leave, he submitted two COVID-19 tests.

137. During Davis's sick leave, both of his COVID-19 tests returned negative results.

138. Despite his negative COVID-19 status, Silco refused to allow Davis to return to work.

139. Silco did not pay Davis during his sick leave as required by FFCRA.

140. Silco unlawfully interfered with Davis's rights under the FFCRA.

141. Silco's refusal to pay David for his FFCRA protected sick leave violated and interfered with Davis's FFCRA rights.

142. Violations of the FFCRA are subject to enforcement under Sections 16 and 17 of the Fair Labor Standards Act. 29 U.S.C. §216, 217.

143. As a direct and proximate result of Defendant's conduct, Davis is entitled to all damages provided for in 29 U.S.C. § 216 and 217, including liquidated damages, costs and reasonable attorney's fees.

### COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

144. Davis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

145. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

146. Defendant's failure to ensure a safe work environment is a violation of R.C. § 4101.11.

147. R.C. § 4101.11 provides that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

148. Defendant's failure to ensure a safe work environment is in violation of R.C. § 4101.12.

149. R.C. § 4101.12 provides that "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe."

150. R.C. § 4101.12 further provides that "No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

151. R.C. § 4101.12 further provides that "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

152. Defendant's failure to ensure a safe work environment is in violation of Ohio public policy as recognized by the Ohio Supreme Court: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prod., Inc.*, 2002-Ohio-66, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385, 388 (2002).

153. The United States District Court for the Southern District of Ohio held "*Pytlinski* is still controlling, it is still good law, and it could not be clearer: 'Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.'" *Lightner v. CB&I Constructors, Inc.*, No. 14-CV-2087, 2016 WL 6693548, at *10 (S.D. Ohio Nov. 14, 2016) (quoting *Pytlinski*).

154. The United States District Court for the Southern District of Ohio held: "Retaliation against employees who file complaints regarding workplace safety, there, clearly contravenes the public policy of Ohio." *Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352589, *4 (S.D. Ohio), *report and recommendation rejected on unrelated grounds in Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352630 (S.D. Ohio).

155. The Tenth District Court of Appeals in *Blackburn v. Am. Dental Ctrs.*, 22 N.E.3d 1149, 1158 (10th Dist. 2014) held that R.C. §§ 4101.11 and 4101.12 "establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters."

14

156. The Tenth District Court of Appeals in *Blackburn*, further held that Ohio has a public policy prohibiting terminating the employment of individuals who make complaints regarding an unsafe work environment.

157. Defendant's failure to take proper corrective action following acts of violence in the workplace jeopardizes Ohio's public policy ensuring a safe working environment.

158. Defendant's ratification of crimes in the workplace jeopardizes Ohio's public policy ensuring a safe working environment.

159. Defendant's termination of Davis jeopardizes these public policies.

160. Defendant dissuaded its employees from making complaints regarding an unsafe working environment.

161. Defendant jeopardized Ohio public policy protecting individuals who make complaints of an unsafe working environment in dissuading employees from making such complaints.

162. Defendant's termination of Davis was motivated by conduct related to these public policies.

163. Defendant had no overriding business justification for terminating Davis.

164. As a direct and proximate result of Defendant's conduct, Davis has suffered and will continue to suffer damages, including economic damages.

**COUNT III: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52.**

165. Davis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

166. On or about February 22, 2021, Davis reported to Silco and Jubeck that Garcia-Romo had committed a criminal act in violation of public safety.

167. A document was created reducing Davis' report of Garcia-Romo's criminal activity to writing.

168. During his employment, Davis complained to Defendant about Garcia-Romo's repeated threats of physical violence.

169. A document was created reducing Davis' second report of Garcia-Romo's criminal activity to writing.

170. Davis reasonably believed that assault is a felony under Ohio law.

171. In the alternative, Davis reasonably believed that Garcia-Romo's threatening physical violence constituted a criminal act that threatens the public's health or safety.

172. Davis verbally complained to Defendant regarding this conduct.

173. Davis complained to Defendant in writing regarding this conduct,

174. Davis gave Defendant an opportunity to cure the reported misconduct.

175. Defendant retaliated against Davis by terminating his employment based on his complaints regarding this conduct.

176. Defendant's termination of Davis was in violation of R.C. § 4113.52.

177. As a direct and proximate result of Defendant's conduct, Davis suffered and will continue to suffer damages, including economic damages.

## DEMAND FOR RELIEF

WHEREFORE, Davis demands from Defendant the following:

(a) Issue an order requiring Silco to restore Davis to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Davis for compensatory damages, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Davis' claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        /s/ *Daniel S. Dubow*
        Daniel S. Dubow (0095530)
        Samuel B. Robb (0099035)
        **THE SPITZ LAW FIRM, LLC**
        25200 Chagrin Boulevard, Suite 200
        Beachwood, OH 44122
        Phone: (216) 291-4744
        Fax:   (216) 291-5744
        Email: daniel.dubow@spitzlawfirm.com
                sam.robb@spitzlawfirm.com

        *Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Christopher Davis demands a trial by jury by the maximum number of jurors permitted.

/s/ *Daniel S. Dubow*
Daniel S. Dubow (0095530)
Samuel B. Robb (0099035)
**THE SPITZ LAW FIRM, LLC**